UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JEANETTE PATTON                                    CIVIL ACTION

VERSUS                                             No. 05-1282-JJB-SCR

JACOBS ENGINEERING GROUP, ET AL.

## OPINION

Jeanette Patton brings this lawsuit seeking accidental death and dismemberment ("AD&D") benefits under an ERISA[1] plan administered by Hartford Life Insurance Company ("Hartford").  This matter is before the court for a decision on the merits, having been submitted upon a stipulated administrative record and the trial briefs of the parties.

**Findings of Fact**

In July of 2002, David Patton was employed by Jacobs Engineering Group ("Jacobs")[2] in Baton Rouge, Louisiana.  In July of 2002, David Patton chose to participate in his employer's insurance benefit plans, including an AD&D policy,[3] a company life insurance policy, and employee paid supplemental life insurance.  Under the AD&D policy, Jeanette Patton, David Patton's wife and plaintiff herein, was designated as the primary beneficiary.

Jacobs established and maintained an employee welfare benefit plan (hereinafter, "the Plan") for the purpose of providing AD&D benefits to eligible employees and their

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq. ("ERISA").

[2] Jacobs was granted summary judgment on March 6, 2007, and is no longer a defendant.  See Rec. Doc. No. 61.

[3] Hartford  issued to Jacobs as Policyholder an AD&D policy, number 72-ADD-002803.

1

beneficiaries.   Hartford acted as the insurer and claims administrator in determining eligibility under the AD&D policy issued to Jacobs.    The Policy provided the fund from which benefits due to eligible Plan participants and/or their beneficiaries were payable, subject to the terms of the Policy.  The Policy defines "eligible persons" in "Class 1" as: "All full-time employees working a minimum of 20 hours per week."[4]

On February 6, 2004, pursuant to the orders and advice of his physician, David Patton took a medical leave of absence from his employment with Jacobs.  On February 11, 2004, Jacobs advised Mr. Patton that he was eligible for leave and placed him on disability leave of absence and concurrent Family Medical leave under the Family Medical Leave Act ("FMLA").  On February 26, 2004, Mr. Patton was advised by letter that his company paid life insurance would continue during his leave at no cost to him, and also that because he was on disability leave, his disability premium was waived and his AD&D policy would continue as long as he paid the premium cost.[5]  Jacobs represented to Mr. Patton that as long as he continued to pay his premiums, he was eligible and covered under the policies of insurance, including the AD&D policy.  Thus, Patton continued making insurance premium payments to Jacobs to maintain insurance coverage.  Jacobs continued to remit premium payments to Hartford on Patton's behalf.[6]

David Patton died on November 10, 2004, from a subdural hematoma that he

---

[4]P 7-47

[5]H 235-236.

[6]H 204-205.

sustained after a fall.[7]  David Patton was classified as a Class 1 full-time employee from July 1, 2002, until the date of his death on November 10, 2004.[8]  Patton was utilizing accrued vacation leave at the time of his death, and the record reflects that this leave was being deducted at the rate of a full-time employee.[9]

On December 7, 2004, Jacobs sent a life insurance claim form and an AD&D claim form to Plaintiff Jeanette Patton, which she completed and returned as instructed.  On February 21, 2005, Plaintiff was advised that benefits were not payable under the terms of the AD&D policy.[10]  Plaintiff requested an independent review of this determination and was again advised by Hartford that no benefits under the AD&D policy were available because Mr. Patton had become ineligible when he ceased physically working on February 5, 2004.[11]

According to Hartford's file notes,  "Mr. Patton did not meet the definition of an active employee" at the time of his death.[12]  The policy does not define "active employee," and does not specify under what circumstances an employee is no longer considered "active." The summary plan description for the AD&D policy does not contain any statement clearly identifying circumstances which would result in disqualification, ineligibility or denial based upon the insured party's "active" or "inactive" status.

---

[7]H 87.

[8]H 90.

[9]H 225-226.

[10]H 255-57.

[11]H 201-203.

[12]H 73.

The administrative record reveals that Mr. Patton was identified as a full-time employee on all Jacobs' paperwork despite his absence from work.  Regardless of this identification, Hartford simply equated the last day that Mr. Patton was physically present at work with being his last day of employment.  The continued payment of insurance premiums, the notations on Mr. Patton's employment record describing him as a full-time employee, and his use of accrued vacation time stand at odds with Hartford's decision to deny benefits.

**Conclusions of Law**

**Standard of Review**

There is no dispute that the Plan at issue  is governed by ERISA.[13]  The appropriate standard of review for actions under ERISA challenging benefit determinations is well settled.   In *Firestone Tire & Rubber Co. v Bruch*,[14] the Supreme Court held that an administrator's denial of benefits is reviewed *de novo* unless the benefit plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[15]   If the plan grants such discretion, a court will reverse an administrator's decision only for abuse of that discretion.[16]   Regardless of the discretion granted an administrator, however, the Fifth Circuit has held that all factual determinations

---

[13] Any and all state law claims are preempted by ERISA.

[14] 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

[15] *Id.* at 101, 109 S.Ct. 956-57.

[16] *Id.*

under ERISA plans are to be reviewed under an abuse of discretion standard.[17]

Here, the Plan expressly grants Hartford the discretionary authority to determine eligibility for benefits under the Plan.[18] Accordingly, the Court considers whether the plan administrator's actions were arbitrary and capricious.[19]   The Court must determine if substantial evidence exists in the record to support the decision.[20]  Substantial evidence "is more than a mere scintilla" and it amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21]    The Court charged with reviewing the denial of benefits under an ERISA plan may not substitute its judgment for that of the plan administrator.[22]   Also, the Court's review of whether an administrator abused its discretion in making factual determinations is limited to the administrative record before the administrator.[23]

Federal courts "owe due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment."[24]  However, less deference is owed to an administrator's decision when a plaintiff demonstrates that the plan fiduciary is not

---

[17]See *Meditrust Fin. Servs. Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir. 1999).

[18] While it does not grant the administrator discretionary authority to construe the terms of the Plan, *Firestone* directs that the abuse of discretion standard is applied when the plan gives the administrator the discretionary authority to determine eligibility for benefits *or* construe the terms of the plan.  Hence, the abuse of discretion standard applies to Hartford's determination of Mr. Patton's eligibility for plan benefits.

[19]*Meditrust*, 168 F.3d at 215; *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 601 (5th Cir. 1994)(quoting *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir. 1992)).

[20]*Meditrust*, 168 F.3d at 215.

[21]*Girling Health Care, Inc. v. Shalala,* 85 F.3d 211, 215 (5th Cir. 1996).

[22]See *Rigby v. Bayer Corp.*, 933 F.Supp. 628, 633 (S.D. Tex. 1996).

[23]*Vega v. National Life Ins. Serv., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999).

[24]*Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991).

completely impartial and has a conflict of interest.  If the administrator is conflicted, courts "will give less deference to the administrator's decision."[25]  When an administrator has a conflict of interest, courts will be "less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision."[26]

In this case, Plaintiff has alleged the existence of a conflict of interest because Hartford is both the administrator of the plan and insurer of the plan.  The Court agrees. At least a "minimal conflict exists when the plan fiduciary is a third party that both insurers and administers the plan."[27]  Therefore, the Court must apply a "sliding scale" standard and give less deference to the administrator's decision.[28]     Under this sliding scale, the "greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be."[29]  In this case, however, Plaintiff has presented no evidence regarding the degree of the conflict.  Thus, the Court will review the decision of the administrator "with only a modicum less deference than [it] otherwise would."[30]

**Review of Hartford's Denial of Plaintiff's Claim**

**1.     Factual Determination of David Patton's Employment Status**

Hartford contends that David Patton's employment status changed on the date that he took his medical leave of absence and did not physically return to work.  Hartford

---

[25]*Vega*, 188 F.3d at 299.

[26]*Id.*

[27]*Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 395 (5th Cir. 2006); *Gellerman v. Jefferson Pilot Financial Ins. Co.*, 376 F.Supp.2d 724, 733 (S.D. Tex. 2005).

[28]*Vega*, 188 F.3d at 298-99.

[29]*Id.* at 297.

[30]*Id.* at 301.

contends that on that date Mr. Patton ceased to be an "eligible person" under the terms of the Plan since he no longer worked a minimum of 20 hours per week after February 5, 2004, and he failed to utilize the conversion privilege which would have extended the AD&D policy.

The eligibility provision of the AD&D policy at issue defines eligible persons as: "All full-time employees working a minimum of 20 hours per week," with a notation beside this definition as "Class 1."[31]  For several reasons, the Court finds that Hartford abused its discretion in making the factual determination that Mr. Patton's employment status changed when he began disability leave/vacation leave.

First, the administrative record shows that documents were submitted to Hartford by Jacobs which clearly reflected that David Patton was classified as a Class 1 Employee and full-time employed until the date of his death on November 10, 2004.[32]  Although Hartford argues this document was submitted for purposes of the CNA Life Insurance Policy, it is clear that Hartford considered this document in reviewing Plaintiff's appeal of the AD&D benefits denial as well.  Hartford argues the claim for benefits under the AD&D policy does not contain a question relative to "full-time employment."  However, the very definition of eligible persons begins with "all full-time employees... ."  Thus, this contention is without merit and not supported by the administrative record.

Second, the record reflects that Mr. Patton was utilizing accrued vacation leave at the time of his death, and this leave was being deducted at the same rate of a full-time

---

[31]H-134.

[32]H-90 and H-241. (These appear to be the same document referenced in both the life insurance policy claim and again in Patton's appeal of the AD&D claim denial.)

employee.  This further supports a finding that Mr. Patton was considered by his employer to be "working" full-time at the date of his death.  Again, Hartford contends there is nothing in the administrative record that showed that "vacation leave" was being deducted from David Patton during the time period in question.  Documents H 225-226 are clearly part of the administrative record and clearly reflect that David Patton was using available vacation time.  Further, the jurisprudence set forth below establishes that an employee utilizing sick or vacation leave does not automatically cause the employee's insurance coverage to lapse.

Finally, the record establishes that AD&D premiums were continually withdrawn from David Patton's check after the date Hartford contends the policy terminated.  This is also evidenced by documents H 225-226 which show a column for deductions and an amount shown deducted beside "A.D.D."  Thus, Hartford's contention that this information is not in the administrative record lacks merit.  While Hartford received an *en globo* payment from Jacobs for the AD&D premiums of all employees, the fact remains that AD&D premiums were withdrawn from Patton's check until the date of his death.  These premiums were deposited into the registry of this Court after Plaintiff filed this lawsuit.  The record reveals that Hartford considered the check stubs and documents submitted by Plaintiff in her appeal; thus, Hartford cannot claim it was unaware of the fact that AD&D premiums had been continually paid by David Patton at least at the time of the appeal.  While the Court recognizes that payments and acceptance of premiums alone is insufficient to establish coverage under a policy, several courts have held that when other supporting factors are

present, as is the case here, this factor supports a finding of coverage.[33]

**2. Interpretation of the Eligibility Requirements**

The abuse of discretion standard involves a two-step inquiry.[34] First, a court must determine the plan's legally correct interpretation.[35] If the administrator's interpretation was not the legally correct interpretation, then the court must determine whether the administrator's decision was an abuse of discretion.[36] In determining whether the administrator's decision was legally correct, we consider: (1) whether the administrator's decision was consistent with a fair reading of the plan; (2) whether the administrator has given the plan a uniform construction; and (3) whether different interpretations result in any unanticipated costs to the plan.[37]

**Fair Reading of the Plan**

The summary plan description provides: "Participants will cease to be covered under the plan when they no longer qualify as a member described in the eligibility section, or when they fail to pay the contribution for coverage."[38] The term "eligible persons" is defined in the plan as "all full-time employees working a minimum of 20 hours per week." Neither the summary plan description nor the policy use the word "active" to define eligibility. Nevertheless, Hartford's file notes indicate that it denied plaintiff's claim on the

---

[33]See *Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634, 643 (5th Cir. 1999); *Tester v. Reliance Standard Life Insurance Company*, 228 F.3d 372, 377 (4th Cir. 2000).

[34]*Pickrom v. Belger Cartage Service, Inc.*, 57 F.3d 468, 471 (5th Cir. 1995).

[35]*Chevron Chemical Co. v. Workers Union 4-447*, 47 F.3d 139, 145 (5th Cir. 1995).

[36]*Id.*

[37]*Id.*

[38]H 71.

grounds that "Mr. Patton did not meet the definition of an active employee... ."[39]  An additional notation in the record states that Patton "was not an active EE on the date of his death."[40]

Thus, the Court finds that Hartford's interpretation of "eligible persons" does not constitute a fair construction of the Plan as it imposes a restrictive requirement not set forth in the summary plan description.[41]  If being on a medical leave of absence from work would render an otherwise Class 1 full-time employee disqualified from eligibility, it should have been disclosed in the policy or summary plan description.   Administrative regulations expressly require that "exceptions, limitations, reductions, or restrictions of plan benefits" be clearly disclosed.[42]

Likewise, in *Bartlett v. Martin Marietta Operations Support, Inc. Life Insurance Plan*[43] the Tenth Circuit found that the plain meaning of "regular full-time employee" was not the same as "regular full-time **active** employee."[44]   In so doing, the court stated: **"If the defendant wanted to limit benefits to regular full-time employees who were actively**

---

[39]H 73.

[40]H 74.

[41]  Hartford has argued that the "active employee" language in Hartford's file notes relates only to the CNA life insurance policy, which did contain a disclosed active work requirement, and not the AD&D policy. However, the Court finds that it is not clear from the administrative record that the comments in the file notes applied only to the life insurance policy since the AD&D policy was also referred to throughout the paperwork. Further, it is interesting that while Hartford claims these file notes state David Patton did not meet the active work requirement in the CNA life insurance policy, Hartford nevertheless paid the benefits due under that policy.

[42]  *Rhorer*, 181 F.3d at 643.

[43]  *Bartlett v. Martin Marietta Operations Support, Inc.,* 38 F.3d 514 (10th Cir. 1994).

[44]*Id.*

**working, it could have done so."[45]**

The court explained:

The eligibility language of the plan is a "regular full-time employee."  Mr. Bartlett was hospitalized at the time with a terminable disease.  The parties agree that he was unable to return to work and that he was placed on medical leave (either with or without his consent).  **Despite those factors, Mr. Bartlett was still a regular full-time employee.  He was hired as a regular full-time employee <u>and was still shown to be a regular full-time employee in the company's personnel records before his death</u>.**

There is no dispute that Bartlett was disabled by his condition.  **However, the disability did not remove him from the list of regular full-time employees.  <u>Disability, as such, can disqualify an employee from being actively working, but does not necessarily disqualify an employee from being a regular full-time employee.</u>  Given the language of the benefits workbook, there is no language to disqualify Mr. Bartlett from the benefits package for which he opted.**  The district court properly found Mr. Bartlett was eligible for the increased death benefits.[46]

The Court agrees with the foregoing analysis.  An employee can be on disability leave and remain a regular, full-time employee.  There is no language in the Hartford AD&D policy or summary plan description which would disqualify a participant for taking medical leave of absence or using accrued vacation leave.  Likewise, just as the pertinent benefit plan in *Bartlett* never qualified eligibility for participation with the word "active," the AD&D policy and summary plan description which govern Patton's claim failed to disclose any "active" or other restrictive requirement for eligibility.[47]   Defendant did not fairly construe

---

[45] *Id. at 517* (emphasis added).

[46] *Id.* at 519 (emphasis added.

[47] The fact that Bartlett never received the booklet which had added the word "active" to the policy does not render *Bartlett* inapplicable.  It makes the *Bartlett* circumstances the most similar to Mr. Patton's, *i.e.*, a policy requiring so many hours a week of work with no active or similarly restrictive work requirement disclosed in the summary plan description.  The court is not persuaded by Defendants' attempts to distinguish *Bartlett*.

the Plan by reading in a requirement that Patton be actively employed.

Alternatively, the Court finds that Plan provisions are at best ambiguous and should have been construed in plaintiff's favor.  It is well-settled that eligibility for benefits under an ERISA plan is first governed by the plain meaning of the language of the contract.[48] However, "when the plan terms remain ambiguous after applying ordinary principles of contract interpretation," the court should "apply the rule of *contra proferentem* and construe the terms in favor of the insured."[49]  Under this doctrine, ambiguities in contracts are to be resolved against the drafter, and it must be applied when a summary plan description contains an ambiguous term or requirement.[50]  Thus, any ambiguous terms in a summary plan description "are resolved in the employee's favor."[51]

In *Campbell v. Unum Life Insurance Co.*,[52] the policy at issue (unlike the one at

---

[48]*High v. E-Systems, Inc.*, 459 F.3d 573, 579 (5th Cir. 2006).

[49]*Id.*, citing *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997). The *High* court determined that the doctrine of *contra proferentum* did not apply primarily because the plan administrator was given the discretion to carry out and interpret plan terms and, "if there had been an ambiguity, MetLife was empowered to resolve it, exercising 'interpretive discretion.'" *Id.* (citation omitted).  In the case before the Court, Hartford as plan administrator was not given discretionary authority to construe or interpret plan terms.

[50]*Rhorer*, 181 F.3d at 641.

[51]*Id.*  The court rejected Raytheon's argument that it could not apply the rule of *contra proferentem* when the plan administrator expressly has been given the discretion to interpret the plan, stating: "But as we explained in *Spacek v. Maritime Ass'n*, this Court uses a unique two-step approach to apply the abuse of discretion standard, and *contra proferentem* may properly be used under the first step."

[52] 2004 WL 1497712 (E.D. La. July 2, 2004). In *Campbell*, the defendant argued that the plaintiff was ineligible to receive disability benefits since she was not "actively employed" as required at the time she filed her claim.  Under the plan's definition of "active employment," an employee could not participate unless the employee met the requirements of active employment: working a minimum of 30 hours per week on a full-time basis.  The policy provided that coverage would terminate upon cessation of active employment, *i.e.*, when one changes to a part-time position or ceases employment altogether. The court noted that the defendant interpreted the provision to require the plaintiff to be working at least 30 hours per week at the employer's usual place of business at the time the claim is made.  Defendant believed plaintiff was ineligible because at the time she made her claim, she was working sporadically and sometimes from home under the temporary modifications allowed by her employer.

hand) used the term "active employment" and yet the court found the provisions on eligibility to be ambiguous:

> Under the Defendant's interpretation of the Policy, an employee who took sick leave time, or vacation time, would fall in and out of coverage as that employee fell in and out of "active employment."  That is, an employee would only be covered for those weeks that the employee *literally* worked at least thirty (30) hours at the employer's regular place of business.  Such an interpretation strains logic.  People get sick and take vacations and do not cease to be enrolled in their insurance plans.  Once an employee becomes eligible for enrollment in a group insurance plan such as the Policy in this case, coverage is continuous until that employee's status changes.  Under the Defendant's interpretation, an employer could prevent an employee from working thirty (30) hours per week regardless of the status of the employee or the temporary nature of allowing an employee to work reduced hours.  The Court is not persuaded by the Defendant's interpretation.[53]

This rationale is clearly applicable to the case at hand.  The plan language relating to eligibility is at best ambiguous.  As any ambiguity must be interpreted in favor of the employee under the doctrine of *contra proferentem,* Hartford failed to fairly construe the Plan in favor of plaintiff.

**Uniform Construction and Unanticipated Costs**

As noted above, whether the decision is consistent with a fair reading of the plan is just the first factor. The second factor is whether the administrator has given the plan a uniform construction.  On this note, the Court observes that there is no evidence that Hartford has uniformly construed its AD&D policy to exclude similarly situated employees on the basis of  ineligibility.[54]  The third factor is whether different interpretations would

---

[53]*Id.* at *13-14 (emphasis added).

[54] This case stands in stark contrast to *Glass v. United of Omaha Life Insurance Company*, 33 F.3d 1341 (11th Cir. 1994), where the plan administrator pro-actively took measures upon discovering that the employer considered employees on leave to be  eligible when the administrator did not.

result in any unanticipated costs to the plan.[55]  The Court finds that such an interpretation might result in unanticipated costs to the plan as defendant would have to make payments to plaintiff and possibly others similarly situated.  However, these two factors appear to be relatively insignificant and the primary focus remains whether defendant's interpretation is fair and reasonable.

**Abuse of Discretion**

Since the Court has determined that Hartford's interpretation of "eligible persons" is not legally correct, the Court must now determine whether Hartford abused its discretion in denying plaintiff's claims.  Three factors are considered in this analysis: "(1) the internal consistency of the plan under the administrator's interpretation; (2) any relevant regulations formulated by the appropriate administrative agencies; and (3) the factual background of the determination and any inferences of bad faith."[56]

**Internal Consistency under Administrator's Interpretation**

The Court finds that Hartford's interpretation obviously threatens the internal consistency of the Plan since the summary plan description provides no information to alert plan participants when they would cease to be eligible for benefits.  The rationale of the *Campbell* and *Barlett* cases (as quoted above) leaves little doubt that the Plan would be subject to serious internal consistency under the Administrator's interpretation.

**Relevant Regulations**

In considering the relevant federal regulations, the Court notes the Fifth Circuit

---

[55] *Chevron*, 47 F.3d at 145.

[56] *Rhorer,* 181 F.3d at 643.

holding that "a summary plan description 'must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries.'"[57]  Further, the federal regulations require that a summary plan description "must contain 'a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial ... of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide.'"[58]

The Fifth Circuit has held that federal regulations which impose restrictive provisions, such as an active work requirement, must be properly disclosed in the summary plan description.  The Court finds that Hartford's interpretation is in contravention of these regulations because the summary plan description did not clearly restrict eligibility for AD&D benefits to employees actively employed, nor did it expressly provide that taking medical leave would alter a participant's employment status.  Thus, the second factor favors a finding that Hartford abused its discretion.

**Factual Background**

The Court has previously addressed the factual background behind the determination of David Patton's employment status.  The Court reiterates that the letters of denial and file notes by Hartford indicate that it arbitrarily concluded that David Patton was ineligible.  There is nothing in the record which indicates, or even suggests, that Hartford interpreted the meaning of "full-time" or considered the fact that Jacobs classified David Patton as precisely what is required to meet eligibility under the plan.  Consideration

---

[57]*Id.*, quoting 29 C.F.R. § 2520.102-2(b).

[58]*Id.*, quoting 29 C.F.R. § 2520.102(3)(l).

of the factual background only strengthens the Court's decision the Hartford abused its discretion in denying plaintiff's claim for benefits.

For all these reasons, the Court finds that Hartford abused its discretion in denying Plaintiff's claim for benefits.[59]

## Attorney's Fees

Both parties have sought attorney's fees in this case.  In deciding whether to award attorneys' fees to a party under ERISA, a court must consider the following factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.[60]  "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g)."[61]  The Court will address each of these factors.

Defendants have made no allegations and offer no evidence in their requests for attorneys' fees with regard to culpability or bad faith on the part of plaintiff.  Plaintiff

---

[59] Defendants cite *Glass v. United of Omaha Life Insurance Company*, 33 F.3d 1341 (11th Cir. 1994). The Court finds that *Glass* is distinguishable because the insured went on leave of absence well before the plan went into effect.  The Eleventh Circuit expressly noted this factor in upholding the denial of benefits.  Id. at 1345.

[60] *Iron Workers Local # 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

[61] *Id.*

16

contends Hartford's culpability is established by its own insistence upon its unlawful plan application and improper plan summary.

Regarding the issue of ability to satisfy an award of fees, Defendants admit that they have no information regarding Plaintiff's financial condition, but state: "Plaintiff did not file this action *in forma pauperis* and, thus, there is no indication that she cannot pay attorney's fees."[62]  The plaintiff counters that the requisites for filing a lawsuit *in forma pauperis* "are a far cry from the financial ability of a party to assume attorneys' fees for both sides after protracted litigation, and Hartford's attempt to correlate the two should be disregarded."[63] The Court agrees.  Plaintiff also concedes no evidence is present on Hartford's ability to pay.

On the issue if whether an award of attorneys' fees against would deter other persons acting under similar circumstances, Hartford claims: "[A]n award of attorney's fees and costs in this case would have a significant deterrent effect on future similar cases."[64] However, defendants do not suggest to the court how this particular case would do such and offer no evidence to support this contention. Plaintiff contends an award of attorneys' fees to plaintiff would have a powerful deterrent effect on Hartford by increasing the company's potential liability for failing to properly handle a claim, review an appeal, or draft a plan summary.    On the issue of whether the attorneys' fees sought would benefit all participants and beneficiaries of an ERISA plan or resolve a significant legal question regarding ERISA itself, the Defendants did not offer anything to support this factor in their

---

[62]Rec. Doc. No. 29, p. 15.

[63]Rec. Doc. No. 80, p. 3.

[64]*Id.*

17

favor.  Plaintiff contends an award of attorneys' fees in her favor would aid other persons properly on leave from employment that would still be considered protected by their insurance policies.  Plaintiff also claims resolution of this lawsuit would benefit all ERISA plan participants by resolving a significant and unanswered question regarding ERISA's application in this district.

On the relative merits of the parties' positions, Plaintiff claims that she seeks a reasonable and fair result under the insurance policy, which is more meritorious than "Hartford's attempt to escape having to pay out on its policies for invalid or convoluted reasons."[65]

The arguments made by the parties in the briefs submitted and the administrative record provide sufficient justification for an award of attorneys' fees.  In this opinion, the Court concluded that Hartford's decision was an abuse of discretion under ERISA jurisprudence.  The Court also believes an award of attorneys' fees would also have a deterrent effect on such an abuse of discretion in the future with regard to plan participants in similar circumstances as the Pattons.  The majority of factors weigh in favor of granting Plaintiff's request for attorneys' fees.

**Conclusion**

For the reasons set forth above, the Court finds in favor of the plaintiff, Jeanette Patton and against the defendants, Hartford Life Insurance Company and the Plan. Hartford is ordered to pay the full amount of the AD&D policy, plus pre-judgment interest. Plaintiff is entitled to costs and attorneys' fees.  The plaintiff shall file a request for

---

[65]Rec. Doc. No. 80, p. 3.

attorneys' fees with supporting documentation within 14 days from the date of this order.

The defendants shall have 7 days thereafter to respond to plaintiff's request.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

Baton Rouge, Louisiana, <u>January 13, 2009</u>.


_____
JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA